# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | |
|---|---|
| BLOCKER FARMS OF FLORIDA, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. CV613-067<br>) |
| KEN O. AND ROBIN R. BELL, | )<br>) |
| Defendants. | ) |

## ORDER

Defendants in this trover case[1] move to reopen discovery in quest of new information. They cite plaintiff's discovery responses, which raise a question about the authenticity of key documents in this case. Doc. 26. Plaintiff opposes, arguing that the defendants failed their duty to confer and now fail to show good cause to reopen discovery. Doc. 30.

---

[1] "'Trover is the statutory right to recover the possession of any form of personal property which has been wrongfully taken[.]'" *Smith v. R.F. Brodegaard & Co.*, 77 Ga. App. 661, 49 S.E.2d 500, 504 (Ga. Ct. App. 1948) (citation omitted); *see* O.C.G.A. §§ 44-12-150 *et seq.*" *Mesa Air Group, Inc. v. Delta Air Lines, Inc.*, 2008 WL 5225811 at *1 (D.Ariz. Dec. 15, 2008); *see also Lamb v. Salvage Disposal Co. of Georgia*, 244 Ga. App. 193 (2000).

## A. BACKGROUND[2]

William H. Blocker, Jr. died intestate on August 21, 2010, but Cale Blocker, his sole heir-at-law, was not appointed Temporary Administrator until December 5, 2011, nor made permanent until June 27, 2012. Doc. 1 at 6-7; doc. 14 at 2. William, however, had defaulted on farm-secured debt, so his farm was sold to Lynn S. Wyatt via nonjudicial foreclosure, *before* Cale could act to recover the personal property (farm equipment, etc.) left on William's farm. Doc. 20 at 3 ¶ 6.

Although Wyatt foreclosure-purchased the farm with those personal property items on it, she was unsure of her legal ownership of them. So when she sold the land out of foreclosure to defendants Ken and Robin Bell on November 15, 2011,[3] those parties used a sales contract for "real and personal property" but with an escrow agreement "whereby funds were held back from the purchase price paid to Wyatt in the event that she could not establish marketable title in the personal property that she could then transfer to the Bells." Doc. 14 at 3; *see also*

---

[2] For the purposes of this Order only, the Court is accepting as true factual assertions made in filings such as the Complaint, the parties' Status Report, and their summary judgment papers.

[3] Cale says he lacked authority to transfer the personal property until June 27, 2012. Doc. 20 at 5 ¶ 20.

2

doc. 20 at 3 ¶ 8.

Blocker Farms alleges that when William Blocker was alive, he owned that personal property through his LLC, and that it was specifically excluded from the foreclosure sale of his farm. Doc. 1 at 2 ¶ 5. Hence, Wyatt never had any legal authority to sell it to the Bells, who are charged with that knowledge. In fact, says plaintiff, the Bells admit they are relying only upon a hearsay verbal statement from Wyatt's attorney that the personal property had been abandoned. Doc. 20 at 4-5.

Cale Blocker, acting as Administrator on June 18, 2013, transferred the personal property from his father's estate to Blocker Farms of Florida, Inc. Doc. 1 at 2-3. Thus, many months after the Wyatt-Bell sale, Blocker Farms demanded the personal property back from the Bells, who refused to return it. *Id.* at 2 ¶ 7. Blocker Farms then brought this action and now moves for partial summary judgment. It wants the property plus damages (including $125,000 in escrow), arguing that Wyatt never owned the personal property, nor had any authority to transfer it to the Bells. Doc. 20 at 5-6.

## B. DISCOVERY DISPUTE

Through written interrogatories the Bells sought to learn the

precise identity of every item on which Blocker Farms bases its property ownership and damages claims. Doc. 26 at 1. They also requested supporting documentation. *Id.* They say that Blocker Farms had produced Bills of Sale between Cale and Blocker, but Cale deposed that he could not remember by what method Blocker Farms paid William's LLC and estate for the personal property at issue. *Id.* at 1-2. So counsel agreed to leave Cale's deposition open pending further document production on the June 18, 2013 Bills of Sale. *Id.* at 2. The Bells thus sent a further document request to nail the issue down. *Id.* Blocker Farms responded with a series of documents. "All of the documents included in [its] response were notarized by Shelly Watts." *Id.*

The Bells, however, point to Watts' June *25*, 2013 "Certificate of Appointment of Notary Public," doc. 26-4 at 1, thus showing she could not have validly notarized the Blocker Farms documentation on June *18*, 2013. Doc. 26 at 2-3. So, the Bells want to reopen discovery on authenticity and other issues. *Id.* at 3. They propose a list of discovery items to that end. *Id.* at 4; *see also* doc. 34.

Opposing, Blocker Farms insists that it has been fully compliant with all discovery requests. Doc. 30 at 1-4. It admits that the records it

4

produced were re-constructions. But it explains that the originals were lost in 2013, after the unexpected departure of counsel's secretary and other office problems. Blocker Farms' counsel recovered them from a computer, re-executed them, and had them notarized by Watts on April 28, 2014 -- while she was a valid notary. Doc. 30-1 at 4-7. He admits that he does not have original copies, *id.* at 6, and Cale Blocker himself was also unable to find any originals. *Id.* at 5. In other words, plaintiff cannot provide the requested originals of the documents. Blocker Farms insists, however, that its opposition brief and affidavit now close any discovery gap, so there is no cause to reopen discovery. *Id.* at 5.

## C. CONCLUSION

The Court **DENIES** the defendants' reopen motion. Doc. 26. Discovery closed in this case on March 31, 2014. Doc. 16. Both sides moved for summary judgment on April 30, 2014, the last day of the civil motions filing deadline. Docs. 19 & 20; *see* S.D. Ga. LR 7.4 ("all motions in a civil action . . . shall be served upon the opposing party not later than thirty (30) days after the close of discovery"). The Bells waited until May 15, two weeks after the motions deadline and after they filed their summary judgment motion, to seek what they've called

"emergency" relief. They by definition move to amend the Scheduling Order, which requires a showing of "good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). That means they must show diligence. *Sosa v. Airprint Sys.*, 133 F.3d 1417, 1418 (11th Cir. 1998).

Absent allegations of sanctionable conduct regarding the documents, the Bells have not shown that here. For that matter, they may invoke Fed. R. Civ. P. 56(d),[4] if not attack the documents' authenticity or other deficiencies through their summary judgment briefs.[5] Finally, they failed in their duty to confer before consuming this Court's resources.[6]

---

[4] "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d); *see also Shuler v. Ingram & Associates*, 441 F. App'x 712, 716 (11th Cir. 2011) ("'the party opposing the motion for summary judgment bears the burden of calling to the district court's attention any outstanding discovery.") (quotes and cite omitted).

[5] The Court has an unlimited reply brief policy. *Podger v. Gulfstream Aerospace Corp.*, 212 F.R.D. 609, 609 (S.D. Ga. 2003)); *see also* S.D. GA. LR 7.6 (authorizing reply briefs but imposing notice requirements and time limits).

[6] Under Local Rule 26.4 and Fed. R. Civ. P. 37(a)(2), parties seeking a protective order or to compel discovery must certify that a good faith effort has been made to resolve the dispute before coming to court. Their duty to confer must also be meaningful. *Hernandez v. Hendrix Produce, Inc.*, 297 F.R.D. 538, 540 (S.D.Ga. 2014). More than a "we met and talked" certification is needed, though every case is different. *See DirecTV, LLC v. Shirah*, 2013 WL 5962870 at * 2 n. 3 (S.D. Ga. Nov. 6, 2013) (collecting cases); *Jackson v. Deen*, 2012 WL 7198434 at * 1 (S.D. Ga. Dec. 3, 2012) ("[n]either face-to-face nor telephone contact is necessarily essential to the 'good faith' certification requirement in every case. Sometimes letters, emails, or

**SO ORDERED,** this 17th day of June, 2014.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

faxes will suffice. But under the circumstances here, the Court is persuaded that more is required than a mere back and forth salvo of papers.").